UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Zacchery Belval,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **Electric Boat Corporation,** : | **October 23, 2023** |
| : | |
| **Defendant** : | |

**COMPLAINT**

**I.    INTRODUCTION**

1.    The plaintiff, Zacchery Belval, brings this action alleging that his employer, the defendant Electric Boat Corporation, has discriminated against him in the terms and conditions of his employment because of his disability; a/d/or has failed and refused to provide him with reasonable accommodations that would ensure his ability to perform the essential functions of his job and provide him with access to the benefits and privileges of employment equal to those enjoyed by similarly-situated employees without disabilities. The plaintiff states claims for violation of his rights under the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq,* as amended, and the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. 46a-60, et seq. The plaintiff seeks injunctive relief; compensation for his economic damages and for his pain, suffering, and emotional distress; reasonable attorney's fees and costs; and prejudgment and post-judgment interest; and such other relief as the Court may award.

**II.   JURISDICTION AND VENUE**

2.    This Court has jurisdiction pursuant to 28 U.S.C. §1331.  With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that

the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.   Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to his claim occurred within this judicial district.

## III.   ADMINISTRATIVE PROCEEDINGS

4.   On or about July 28, 2023, the Connecticut Commission on Human Rights and Opportunities issued a release of jurisdiction as to the plaintiff's administrative complaint of disability discrimination.

5.   On or about August 4, 2023, the federal Equal Employment Opportunities Commission issue a Right to Sue letter in connection with the plaintiff's administrative complaint of disability discrimination.

## IV.   PARTIES

6.   The plaintiff is Zacchery Belval, who resides at 29 Cora Street, Enfield, Connecticut.

7.   Zacchery Belval is a qualified person with a disability as that term is defined at 42 U.S.C. §12102(1) and is disabled as that term is defined at Conn.Gen.Stat.§46a-51(15). Belval suffers from several serious health conditions, including a complex congenital heart defect, heterotaxia (the inversion and abnormal arrangement of organs), the lack of a spleen (which seriously compromises his immune system against infections), an impaired circulatory system, and severe anxiety that requires medication and counseling, and which has caused symptoms such as high blood pressure. He is substantially limited in major life activities,

2

inasmuch as his condition and treatment for his condition cause him to experience severe fatigue, limit the length of time and distance he can walk, and place him at a very high risk of infection that can be life-threatening.

8. At all times relevant to this Complaint, Zacchery Belval was an employee of the defendant as that term is defined at 42 U.S.C. §12111(4) and Conn.Gen.Stat. §46a-51(9).

9. The defendant Electric Boat Corporation (hereinafter, "Electric Boat") is a Delaware corporation with its principal place of business at 75 Eastern Point Road, Groton, CT 06340. Electric Boat employs more than ten thousand (10,000) people in Connecticut. At all times relevant to the Complaint, Electric Boat is an employer as that term is defined at 42 U.S.C. §12111(5) and Conn.Gen.Stat. §46a-51(10).

**V.     FACTS**

10. The defendant hired the plaintiff as a senior drafter on or about November 1, 2017, promoting him to designer on or about July 1, 2020.

11. The plaintiff's duties mostly involved paperwork, mainly editing documents prepared by Electric Boat engineers, from the time he was hired.

12. Due to the plaintiff's uncommon physical conditions, he is at risk of improper diagnosis and treatment if he requires emergency medical care from unfamiliar medical providers.

13. Due to the plaintiff's medical conditions and the heightened risks of complications he faces in the event of contracting COVID-19 or other infections, during his employment by the defendant it was far healthier for the plaintiff to not have to be present at the defendant's boat yard in Groton.

14. The walk from the parking lot to the plaintiff's office (about a quarter-mile each way) was physically challenging for him, as was the commute to and from the Groton facility.

15. In addition, the office work environment itself created dangerous stress for the plaintiff. Poor ventilation, mold and dampness in the building, and the crowded work spaces combined to substantially increase the plaintiff's risk of COVID-19 and other infections.

16. During the late Summer and early Fall of 2020, the defendant began allowing many of its employees to work from home due to the risks presented by the COVID-19 pandemic, including everyone in the plaintiff's department.

17. During the implementation of the defendant's work-from-home policy, the majority of the plaintiff's team members continued to work at home, with some reporting to the office one day a week.

18. Not long after the work-from-home policy began, the plaintiff's manager began requesting that he return to office-based work. Through October 2021 the plaintiff was generally able to make alternate arrangements with support from his union representative and supportive medical documentation from his health care providers.

19. The work performed by the plaintiff can be done remotely, with any communications via email or phone calls when necessary, as it is mental labor that mainly consists of editing documents, the work is solitary, and does not lend itself to visual supervision by a manager.

20. Although the plaintiff held a security clearance as part of his job, the documents he worked on were not highly sensitive in nature. The plaintiff obtained a company-owned

computer that helped to alleviate any security concerns involving the use of his personal laptop.

21.     As was shown by the defendant's implementation of its work-from-home policy as it applied to the plaintiff and to others in his department, the essential functions of the plaintiff's job can be performed adequately from a remote location without coming into the boat yard at all.

22.     The plaintiff continued working from home through October 12, 2021, when he began a period of Family Medical Leave Act leave pursuant to a letter from his doctor, who said the plaintiff should not physically return to work in order to avoid contracting COVID-19.

23.     The defendant ignored the plaintiff's doctor's letter and requested he return to work in person.

24.     The plaintiff's FMLA period ended on January 3, 2022.

25.     The APRN who regularly treated the plaintiff wrote a letter dated January 4, 2022, recommending that the plaintiff continue working from home.

26.     The defendant offered to allow the plaintiff to work from home one or two days a week. This was an insufficient accommodation that would have placed the plaintiff at substantial risk of contracting COVID-19 and other infections.

27.     Because the plaintiff was not cleared by a doctor to physically return to work, he was unable to return to the boat yard, he was placed on an extended leave of absence that continued through April 10, 2023.

28.     On or about April 14, 2023, the plaintiff contacted the defendant's Occupational Health Center to reiterate his request that he be reasonably accommodated by being

permitted to work from home. The telephone call went to voice mail, and on or about April 17, 2023, a staff person from the Occupational Health Center returned the plaintiff's call.

29. The Occupational Health Center staff person claimed to be unaware of any request from the plaintiff for a reasonable accommodation for his disabilities.

30. The plaintiff re-stated his request that he be given a reasonable accommodation of his disabilities such that he work full time remotely from home.

31. On or about April 18, 2023, the plaintiff sent an email to the Occupational Health Center memorializing the April 17 telephone conversation described above. The plaintiff included as attachments to the email documents reflecting his prior requests to be allowed to work remotely from home and offered to provide whatever updated medical information the defendant might require to consider his repeated request for an accommodation.

32. In the email the plaintiff specifically requested that further communications about his request for a reasonable accommodation be made in writing.

33. The plaintiff provided updated medical releases, permitting the defendant to communicate with his medical treaters.

34. The plaintiff's cardiology team wrote a letter to the Occupational Health Center stating its recommendation that the plaintiff continue to work remotely from home.

35. On or about August 7, 2023, and despite the plaintiff's request that communications be made in writing, a staff person from the Occupational Health Center contacted the plaintiff.

36. On or about August 15, 2023, Kate Olsen, the defendant's Human Resources Ethics and Compliance Manager, sent a letter to the plaintiff informing him, *inter alia,* that the

defendant denied his request to work full time remotely from home as an accommodation for his disabilities.

37. Olsen stated that the defendant had "approved an alternative accommodation of allowing you to work remotely three days a week and onsite two days a week."

38. At the time that the defendant offered the "alternative accommodation," it was aware that the "alternative" was contrary to the recommendations of the plaintiff's medical treaters.

39. Notwithstanding the above, the defendant directed the plaintiff to report to the Occupational Health Center by August 21, 2023, or it would regard him as having "resigned" his position.

40. The plaintiff did not return to work due to his medical restrictions.

41. As a result of the defendant's failure to provide a reasonable accommodation to the plaintiff, and the defendant's termination of the plaintiff's employment he has suffered harm, including a loss of the wages and benefits of employment and pain, suffering, and emotional distress.

## VI.     COUNT ONE: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 41, above.

42. The defendant's conduct as described above constitutes discrimination against the plaintiff on the basis of disability in regard to the terms, conditions, and privileges of his employment, including by limiting, segregating, or classifying the plaintiff in a way that

adversely affected and affects his opportunities or status because of the plaintiff's disability, in violation of 42 U.S.C. §12112(b)(1).

### VII.     COUNT TWO: FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF THE ADA

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 41, above.

42. The defendant's conduct as described above includes instances in which it failed to make reasonable accommodations to the plaintiff's known physical limitations where the accommodation would not impose an undue hardship on the operation of the defendant's business in violation of 42 U.S.C. §12112(b)(5)(A).

43. The defendant's conduct as described above includes instances in which it denied employment opportunities to the plaintiff where such denial was based on the need of the defendant to make reasonable accommodation to the plaintiff's physical impairments in violation of 42 U.S.C. §12112(b)(5)(B).

### VIII.    COUNT FOUR: DISABILITY DISCRIMINATION IN VIOLATION OF THE CFEPA

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 41, above.

42. The defendant's conduct as described above constitutes discrimination against the plaintiff on the basis of physical disability in regard to the terms, conditions, and privileges of his employment in violation of Conn.Gen.Stat. §46a-60(b)(1), including but not limited to refusing the plaintiff's request for a reasonable accommodation through the modification of work schedules.

## PETITION FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court order the following relief:

1. Enjoin the defendant from discriminating against the plaintiff on account of his disability and/or refusing to provide a reasonable accommodation to the plaintiff by reinstating him to the position, seniority, and salary he would have obtained but for the defendant's unlawful conduct;

2. Award plaintiff his economic losses, including lost wages and benefits of employment;

3. Award plaintiff compensatory damages, including damages for his pain, suffering, and emotional distress caused by the defendant's wrongful conduct;

4. Award the plaintiff his reasonable attorney's fees and costs; and

5. Such other relief as the Court deems appropriate.

**REQUEST FOR A JURY TRIAL**

The plaintiff respectfully requests a jury trial as to all of his claims to the extent that he is entitled by law.

                                      RESPECTFULLY SUBMITTED
                                      ZACCHERY BELVAL,
                                      THE PLAINTIFF, by

                                      _/ s / Peter Goselin_
                                      Peter Goselin ct06074
                                      The Law Office of Peter Goselin
                                      P.O. Box 331313
                                      Hartford, Connecticut 06133
                                      Tel. 860-580-9675
                                      Fax 860-471-8133
                                      pdgoselin@gmail.com