UNITED                STATES                DISTRICT                COURT

FOR THE DISTRICT OF CONNECTICUT

ZACCHERY BELVAL,

       Plaintiff,

                        Civil Action No. 3:23-cv-01387

v.

ELECTRIC BOAT CORPORATION,

Defendant.

Response to Defense Request Reconsideration Memorandum, filed 5/18/26.

Purpose:

To establish truth in writing rather than the misrepresentative claims of the memorandum filed by defense.

Personal Note: Plaintiff's Grandmother (Karen Barr, Rouseville, PA) passed the week of this filing, and Plaintiff was indisposed with family matters for the entire week. The following week was spent grieving. Plaintiff requests consideration and ample response time given these facts.

Response and Request for Court:

It is clear from Defense response that they did not read all of Plaintiff's filings to oppose Summary Judgement with due diligence, as almost every issue they bring forth is addressed directly in the text submitted.

Secondly, nowhere in their document do they seem to address the additional facts submitted with supporting evidence in subsequent filings and appear to rely solely on some kind of selective reading of the documents.

For example, the Plaintiff argues in reference to Tudor v Whitehall that 1) the plaintiff of said case did not need to necessarily *require* a given accommodation, but that its granting would improve quality of life. 2) Tudor v Whitehall asserts that the PTSD of plaintiff in this case requested working from home, and that because a physician of adequate standing recommended it, said accommodation should be allowed. When Defense states in their Reconsideration, "Contrary to Plaintiff's assertion, neither Tudor nor Rodriguez involve any remote work request. Rather, Tudor simply identified that an employer may be required to offer a reasonable accommodation even where an employee did not need an accommodation to perform the essential functions of their job..." on page 5 of their filing, this is a misrepresentation.

The Tudor case was about the Work from Home accommodation requested, it was the core assertion of the entire case. Therefore by reasonable induction, and by court documents statement, granting the merit of an accommodation that wasn't strictly necessary infers and is concluded in awarding said Work from Home accommodation. The fact that this reasoning from the ruling judge in the Fifth District case of Tudor v Whitehall is nearly identical to the reasoning originally reported in Plaintiff Belval's response documents.

The Rodriguez v. City of Chicago case establishes the standard for what is considered fully addressing the accommodation needs and nothing more. Since both ADA and Religious accommodations are both empowered by the same Congressional Civil Rights act, the standard for definitions and practice should apply to all subsequent cases under this reasoning. The facts of the case dispute whether or not all of Rodriguez's needs were met by the City of Chicago by their proposed accommodation. The court found that they were not, and ordered that the original requested accommodation be adhered to.

Similarly, Belval is asserting that the proposed accommodation did not meet the needs of the medical requirements for his accommodation. And that because other attempts to negotiate other accommodations which met his needs failed due to Defense's refusal to 1) confer with Belval's attorney while he was indisposed and 2) failed to address conversations Belval and Bolanos had via the phone which other possibilities were discussed. They failed to address the core needs of the accommodation and therefore their argument fails on its face. Defense even concedes to this point when they quote, "eliminate the conflict between employment requirements and religious practices." On page 5 of their reconsideration. They know what the objective of this case reference is, and they still refuse to abide by the ruling of the cited case.

Plaintiff even cites a verbatim quote in an email of Defense's Human Resources Representative declaring they will not cooperate. This eliminates Defense's arguments about unmerited evidence, as a direct quote of a written document is about as concrete of evidence as one can get. Holding a higher quality of evidence than even video and audio recordings. The only better source of evidence for this claim would be if Defense had said it in a sworn statement in court.

Secondly, Defense fails to address the Undue Burden Standard by any established test or reasoning, instead claiming without support and in light of counter support of material fact of this

case as a matter of operation. They claim that "training and professional development" justify their needs, this is not an undue burden, but rather is an argument made under the list of Affirmative Defense's. Claiming that the employee was unable to do their job is an Affirmative Defense under the Americans with Disabilities Act of 1973, which would be construed as admitting to the Failure to Accommodate.

And further places the burden on the Defendant to prove as more likely than not, that the employee's performance was so poor that there was no possibility of remedy with the requested accommodation. 29 CFR, Subtitle B, Chapter XIV, Part 1630(p) states, "**In general. Undue hardship** means, with respect to the provision of an accommodation, significant difficulty or expense incurred by a covered entity, when considered in light of the factors set forth in paragraph (p)(2) of this section." The entire concept of "Undue Burden" in the law is prefaced on the *financial hardship* of the employer. Arguments about training and professional development are therefore non-responsive to this section under any reasonable interpretation.

Defense would need to argue under Part 1630(q) that performance was demonstratably affected in a manner which was unable to be addressed regardless of accommodation status, as stated. "**Qualification standards** means the personal and professional attributes including the skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired." Defense would have to prove this to the standard of a Civil Case, having to convince the court that any reasonable person would be more likely than not to assert that Plaintiff was entirely, and absolutely unable to perform the duties of their employment *regardless* of accommodation. That is with or without the accommodation. Defense, is distorting the law and fails to bear the burden of their claims. Link to cited law for austerity (https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XIV/part-1630)

Plaintiff could continue to reiterate the arguments made in their original filings as response for Defense's Request for Summary Judgement, but this would be moot and a waste of the court's time.

Claims about evidence which has personal notes and annotations are not false, but are not germane to the arguments made by Plaintiff. And were clearly stated as allowing the court to establish context should they choose to do so. The sections referenced in Plaintiff's filings followed the Federal Rules of Evidence for establishing authentication and originality, and where necessary additional foot notes were made to describe why the format changed to accord with ease of reading. This again is an attempt to distract the court from assessing evidence as they see fit because the rote facts contained in the hundreds, if not thousands of pages of submitted evidence clearly paint Defense in a poor light far beyond the scope of this suit and therefore represent a significant liability to Defense. In the Plaintiff's opinion a reasonable court should see this as an attempt to obscure fact and evade justice. But again, this is beyond the scope of this case.

On page 6 Defense uses the language "...home full-time indefinitely was reasonable." Which is ostensibly not what Plaintiff has claimed at any time, and is a phrase invented by defense to construe the facts in an unreasonable light. The supporting documentation in Opposition to Summary Judgement filed specifically address this point. Showing that just because the time scope is impossible to know does not in fact mean that it is "indefinite" in the sense which Defense is

attempting to use such a word. Federal Regulations on the conduct of a court in such a matter indicate that when a words definition is in question, the court is required to treat this as a reference to expert interpretation. Erica Brozovsky, Ph.D. clearly lays out this assertion, as a highly respected Linguist in her PBS special "The Problem with Judges Acting Like Linguists", dated May, 26 2026 available here (https://www.youtube.com/watch?v=l7To2evwGKs) Therefore, Plaintiff asserts that the common meaning of "an unknown amount of time" would be more appropriate. But because Defense invented this turn of phrase, it should also be dismissed all together as it was never a central point of any argument.

Plaintiff required treatment for a medical condition, the condition was complex, cutting edge, and ongoing. Therefore, Plaintiff did not know when the accommodation period would end, and could not make a claim of such timeframe in light of those facts. This is an established and reliable line of reasoning in all kinds of Civil Cases involving medical maladies, from auto accidents, to medical malpractice. This is not an uncommon or invented concept, but rather an established fact of the practice of medicine. This is another attempt of Defense to distract the court from the facts of the case and instead rely on superfluous language to obscure those facts. Defense's further arguments on page 6 clearly indicate that they had a deficient reading of the DeJoy case, as again, this case establishes a test for whether or not something is a financial burden. And this further illustrates how Defense has a deficient understanding of the part 1630 legislation referenced above.

As Defense continues their, assertions, on page 7. They attempt construe a response to a specific claim from one of their Yard Hospital staff that they were unable to continue to have an open discourse with Plaintiff's APRN's because a HIPAA release had supposedly expired. Because HIPAA releases cannot expire without an express expiration clause, which were intentionally absent in the releases provided to Defense by Plaintiff, this argument is moot. Undermining their argument by contradicting their previous claims in their own written response, "While unclear, Plaintiff appears to reference this guidance to allege that Electric Boat should not have contacted Plaintiff's healthcare provider for clarification on Plaintiff's restrictions. Such an assertion – while incorrect and, in any case, plainly not rising to the level of a genuine issue of material fact – directly contradicts the undisputed record; namely, that Plaintiff gave his consent for Electric Boat to communicate with his healthcare providers about his requests for accommodation."

Defense cannot have a medical expert on one hand claim that they were unable to contact Plaintiff's medical staff due to an impossibly expired HIPAA release, while also claiming that they had permission in a legal filing. This contradictory statement alone speaks to the failure to abide by a cooperative intent in the negotiations of accommodation. If they were attempting to accommodate, their story would be consistent with the claims of their medical staff. Not attempting to disparage the character of the Plaintiff. Please refer back to the original verbal assertions in the first teleconference where Plaintiff asserted the tactics of a "David and Goliath" lawsuit. Defense is attempting to intimidate, gaslight or otherwise undermine the credibility of the Plaintiff by again misrepresenting arguments in their favor.

Further, Defense misquotes the law in their statement on the following page, page 8 "Plaintiff's references to 20 C.F.R. § 702.403 and 45 C.F.R. § 164.508, respectively, are also misplaced. See Dkt. 138 at pp. 2-3 & 6-8. The former pertains to the Longshore and Harbor Workers' Compensation Act ("LHWCA") and the latter to the Health Insurance Portability and Accountability Act ("HIPAA")

privacy rule. Neither law is relevant to the summary judgment analysis in the present case. As to the LHWCA, Plaintiff references a requirement that employees be allowed to choose their own healthcare provider and identifying 25 miles as a reasonable distance to travel to the chosen healthcare provider…" The 25-mile expectation does not arise from the Longshoremen's act, but is rather the recommendation from the Federal Department of Labor. The fact that it is also in the Longshoremen's act as referenced by Defense seems to also implicate the fact that their maritime and naval engagement may be construed as raising this from the level of a Departmental recommendation, to an actual law requirement. When Defense states on page 7 "(2) he had to travel an unreasonable distance to a healthcare provider in relation to any benefits he sought under the LHWCA."

They are again undermining their own argument here, because Plaintiff was originally arguing that requiring Plaintiff to drive from Groton to Hartford in the event of a medical emergency would surely result in his death or a magnification of his maiming resulting from injury sustained by improper responses due to his extremely rare condition. This would therefore be a reasonable application of the Department of Labor's recommendation as a means to conserve life and well-being.

Under the reasoning which Defense has brought to light, however, it seems it would also be illegal if the Marine Drafters Association and Submarine Construction, were to be interpreted as applicable trades to the Longshoreman's acts. As clause (4) of the definition's section of said act states, "The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." Which the Groton building where Belval was assigned would without contest be reasonably defined as such. The law they cited, defines them in writing as applicable. (https://www.law.cornell.edu/uscode/text/33/902)

Remedy Requested:

To either Quash and Dismiss Document 139 on its face as established above. Or to compel Defense to support their claims specifically with evidence as burdened by such claims. A teleconference would be appreciated if the Judge finds this memorandum to be insufficient. But Plaintiff does not see the need given the clear inconsistencies and logical fallacies of the subject memorandum. Plaintiff would further implore Defense to directly quote text of law, or filings which demonstrate their claims. As there is dubious merit in claiming that they even read, or were sufficiently interpreting the documents they referenced.