**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ZACCHERY BELVAL,**<br>**Plaintiff,**<br><br>**v.**<br><br>**ELECTRIC BOAT CORPORATION,**<br>**Defendant.** | No. 3:23-cv-01387 (SRU) |

**ORDER ON MOTION FOR RECONSIDERATION**

Self-represented plaintiff, Zacchery Belval, alleges failure-to-accommodate and disability discrimination claims against his former employer, Electric Boat Corporation ("Electric Boat"), under the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA"), respectively. On July 21, 2026, I granted summary judgment to Electric Boat on both of Belval's claims. *See* Doc. No. 147. In doing so, I concluded that Belval was not a qualified employee under either the ADA or the CFEPA, that Electric Boat offered Belval a reasonable accommodation, and that Belval failed to show that his disability was the but-for cause of his termination. *See id*.

On the same day that I granted summary judgment for Electric Boat, Belval filed a document titled "Appeal to Ruling." Doc. No. 150. In that filing, Belval argues that I did not properly consider the Social Security Administration's ("SSA") denial of his Social Security Disability Insurance ("SSDI") claim when I assessed whether he was qualified to perform the essential functions of his job at the time of his termination. *Id*. at 1. Belval does not provide the SSA's decision in his filing. Instead, he attaches his correspondence with a law firm that assisted him with his application for SSDI benefits, as well as other documents Belval submitted to the SSA. *See* Doc. No. 150-1.

I construe Belval's filing as a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. Rule 59(e) allows district courts to "alter or amend judgment 'to correct a clear error of law or prevent manifest injustice.'" *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008) (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)). "The standard of review for a motion for reconsideration is 'strict' and reconsideration 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *United States Securities and Exchange Commission v. Collector's Coffee Inc.*, 2025 WL 934842, at *1 (S.D.N.Y. Mar. 27, 2025) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Belval claims that I erred when I concluded that he was not qualified to perform the essential functions of his job at the time of his termination. In support of his assertion, Belval emphasizes that the SSA rejected his SSDI application on the grounds that he "was not disabled and not unable to work," and that, because the SSA's ruling has binding legal authority, its determination means that he must have been qualified to perform the essential functions of his job at the time of his termination. Doc. No. 150 at 1.

The SSA's ruling does not bear on whether Belval was qualified to perform the essential functions of his job at Electric Boat. That is because, as the United States Supreme Court has explained, the Social Security Act and the ADA employ distinct statutory schemes regarding who qualifies for coverage under each statute. *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803 (1999). An individual is disabled for purposes of the Social Security Act if they are unable "to engage in *any* substantial gainful activity . . . for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A) (emphasis added); *see also* SSA, *How*

*Does Someone Become Eligible?*, https://www.ssa.gov/benefits/disability/qualify.html#anchor3 (last visited Sept. 11, 2026) ("The definition of disability under Social Security is different than in other programs. [The SSA] pay[s] only for total disability. No benefits are payable for partial disability or for short-term disability."). The ADA and CFEPA, in contrast, do not require total disability and instead allow individuals suffering from partial or short-term disabilities to bring failure-to-accommodate and disability discrimination claims if they can "perform the essential functions of the [] position, with or without reasonable accommodation." *Williams v. MTA Bus Co.*, 44 F.4th 115, 133 (2d Cir. 2022).

Those distinct definitions explain Belval's predicament. The SSA presumably concluded that Belval could not receive SSDI benefits because he was not totally disabled. In other words, the SSA determined that Belval could have conceivably performed *some* job at least part-time, because the materials he provided in his SSDI application did not show that he was incapable of working *any* job. The fact that Belval might have been able to perform some job does not mean, however, that he was qualified to perform the duties of the Mechanical Designer position at the time he was terminated from that position. Although Belval asserts in his reply to his motion that he was only incapable of performing the duties of the Mechanical Designer position for "a small point of time" and that he was therefore not "permanently incapable of doing the essential jobs of the position," doc. no. 161 at 2, the inquiry regarding one's ability to perform the essential functions at the time of termination only looks at the employee's capacity around *the time of his termination*. It does not ask whether an employee was qualified at the time of hiring or whether that employee would be capable of performing essential functions at some hypothetical point in the future. Accordingly, I reiterate that:

> No reasonable jury could conclude that Belval was qualified for the Mechanical Designer position when he admitted to being incoherent a month before his termination, and when

> his medical provider noted in an SSDI application submitted two months after his termination that he could not work more than one hour per day.

Doc. No. 147 at 13.

Although Belval only mentions his SSDI argument in his Rule 59(e) motion, he raises several other arguments in filings he submitted after his Rule 59(e) motion. Those arguments, however, do not point to controlling decisions or evidence that I overlooked in my decision. Instead, Belval either repeats arguments that I already considered and addressed at the summary judgment stage, *see* Doc. No. 161 at 1 (noting that he was qualified to perform the essential functions of his job because of his academic credentials), or makes new assertions without supporting evidence. *See id*. at 4 (claiming that his medical provider advised him not to drive, without providing evidence either of that statement or that Electric Boat knew of his medical provider's recommendation). A Rule 59(e) motion is not the place for litigants to make "repetitive arguments on issues that have been thoroughly considered by the court." *United States Securities and Exchange Commission v. Ahmed*, 2026 WL 673563, at *1 (D. Conn. Mar. 10, 2026) (citation omitted). It is also not the time for litigants to "assert[] new arguments or [to] introduc[e] new evidence that could have been adduced during the pendency of the underlying motion." *Palmer v. Sena*, 474 F. Supp. 2d 353, 355 (D. Conn. 2007) (internal quotation marks and citation omitted).

Finally, Belval in his various filings attempts to raise new claims and to re-litigate motions that I decided prior to the entry of judgment in this case. For instance, Belval asks me to compel Electric Boat to turn over "all Email[s], messages, and written communication by Electric Boat Staff." Doc. No. 161 at 10. I have already denied that motion. *See* Doc. No. 72. Belval may also not file a new motion to compel evidence in a closed case. *See* Fed. R. Civ. P. 37(a)(2) (emphasis added) ("A motion for an order to a party must be made in the court where

the action is *pending*.”). Similarly, Belval may not, after judgment has been entered and the case has been closed, raise new claims in the same action. If Belval wishes to assert new claims, he must file them in a separate lawsuit, although he should be aware that he may be barred from asserting those claims under the principle of claim preclusion.

Because Belval does not provide any controlling decision or data that warrants the “extraordinary remedy” of a Rule 59(e) motion, *Collector's Coffee Inc.*, 2025 WL 934842, at *1 (citation omitted), I **DENY** his Rule 59(e) motion. If Belval still disagrees with my decision to grant summary judgment in favor of Electric Boat, he may pursue relief through his pending appeal to the United States Court of Appeals for the Second Circuit. Continued filings with this court in this case, however, are not productive.

**SO ORDERED** at Bridgeport, Connecticut this 11th day of September 2026.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge